McGuinn-Rowe v. Foster's Daily Dem.   CV-94-623-SD 07/10/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


<u>Mari-Beth McGuinn-Rowe</u>


        v.                              Civil No. 94-623-SD


<u>Foster's Daily Democrat</u>



## O R D E R


    In this civil action, a former employee of the defendant asserts that she was sexually harassed and then discharged for retaliatory reasons, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, <u>et seq.</u>  The complaint also contains claims under state law.  In a previous order, the court granted summary judgment in defendant's favor as to the state-law claims, but permitted the Title VII claims to go forward.  <u>See</u> Order, April 24, 1995.

    Presently before the court is defendant's motion for partial summary judgment as to the hostile environment sexual harassment claim.  Plaintiff objects.


## Background

    Plaintiff Mari-Beth McGuinn-Rowe began working as an account representative at defendant Foster's Daily Democrat on

September 12, 1987.  She eventually changed positions to account representative for retail sales.

She claims that during the course of her employment she was sexually harassed by two management-level employees, Frank McSweegan and Wayne Chick.  In her deposition, Rowe describes an encounter she had with McSweegan on April 13, 1990, which occurred when she was socializing with a female coworker after work at a nearby bar.  McSweegan approached her and began leaning against her, but stopped when she protested.  Deposition of Mari-Beth McGuinn Rowe at 138.  However, later that evening, he approached her from behind and "rubbed himself on [her] like he was having sex".  Id. at 140.

McGuinn-Rowe also states that Chick regularly harassed her by routinely calling her names such as "sweetheart"; making sexually-charged comments to her and others such as "nice ass" and "let's get a room"; saying that she "owed him"; making frequent off-color jokes; and massaging her shoulders without her consent.  See Affidavit of Mari-Beth McGuinn-Rowe.  Despite her complaints to him, Chick did not stop.  See id.

About a month after the McSweegan "rubbing" incident, McGuinn-Rowe complained to one of her supervisors, Conrad LeBrun, and asked that the three of them have a meeting.  McGuinn-Rowe Deposition at 60; Complaint ¶ 19.  Afterward, McGuinn-Rowe

2

noticed that two of her supervisors, LeBrun and Chick, became extremely critical of her day-to-day work.  McGuinn-Rowe Deposition at 121.  One month after lodging her complaint, she was terminated.  Complaint ¶ 20.

McGuinn-Rowe filed charges with the New Hampshire Commission on Human Rights and the Equal Employment Opportunity Commission within 180 days after the unlawful acts had been committed. Id. ¶ 5.  Within 90 days of receiving a notice of her right to sue, plaintiff filed the instant action.

## Discussion

### 1. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Rule 56(c), Fed. R. Civ. P.; Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996). Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "'is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Stone & Michaud Ins., Inc. v. Bank Five for Savings, 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

When the nonmoving party bears the burden of persuasion at trial, to avoid summary judgment he must make a "showing sufficient to establish the existence of [the] element[s] essential to [his] case." Celotex Corp. v. Catrett,, 477 U.S. 317, 322-23 (1986). It is not sufficient to "'rest upon mere allegation[s] or denials of his pleading.'" LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson, supra, 477 U.S. at 256), cert. denied, ___ U.S. ___, 114 S. Ct. 1398 (1994). Rather, to establish a trial-worthy issue, there must be enough competent evidence "to enable a finding favorable to the non-moving party." Id. at 842 (citations omitted).

In determining whether summary judgment is appropriate, the court construes the evidence and draws all justifiable inferences in the nonmoving party's favor. Anderson, supra, 477 U.S. at 255. Nevertheless, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

2. The Title VII\Hostile Environment Claim

Under Title VII, it is "an unlawful employment practice for

4

an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Sexual harassment constitutes unlawful discrimination under Title VII. Meritor Savings Bank, F.S.B. v. Vinton, 477 U.S. 57, 66 (1986).

Workplace sexual harassment may take either of two forms. "Quid pro quo harassment" consists of promises of favorable treatment or threats of unfavorable treatment calculated to coerce an employee into submitting to unwelcome sexual advances. Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir. 1996). "Hostile environment harassment" consists of "offensive gender-based conduct that is 'severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive' and is subjectively perceived by the victim to be abusive."  Id. (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  The instant case is a "hostile environment harassment" case.

The determination of whether a plaintiff has established a hostile or abusive workplace environment requires the court to consider all of the circumstances, but particularly those concerning (1) the frequency of the discriminatory conduct; (2)

5

its severity; (3) whether it is physically threatening or humiliating rather than a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. Brown v. Hot, Sexy & Safer Productions, Inc., 68 F.3d 525, 540 (1st Cir. 1995), cert. denied, ___ U.S. ___, 116 S. Ct. 1044 (1996) (citing Harris, supra, 510 U.S. at 23).[1] As previously indicated, the relevant factors must be viewed both subjectively and objectively. Id.

In addition to establishing that she was sexually harassed, plaintiff must also present evidence sufficient to impute liability to her employer, the defendant.

Defendant argues that the conduct cited by plaintiff was not sufficiently severe and pervasive to constitute actionable sexual harassment. The offending conduct included explicit sexual comments routinely directed to the plaintiff and other female employees, physical touching, and the telling of off-color jokes at meetings. Thus, the conduct perpetrated at plaintiff's place of work was sufficiently severe to be actionable.

McSweegan's alleged sexual assault of plaintiff at the bar also contributed to the hostile environment plaintiff experienced at work, even though this particular incident occurred outside

---

[1]Although Brown was a Title IX case, it made use of the quoted elements which were taken from Title VII cases.

the workplace setting. The determination of whether the environment at the workplace is sufficiently hostile or abusive is not "a mathematically precise test." Harris, supra, 510 U.S. at 22; rather, the court must review all of the circumstances, id. at 23. In particular, "'in some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment.'" Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 718 (3d Cir. 1997)(quoting Ellison v. Brady, 924 F.2d 872, 883 (9th Cir. 1991)). This is not a per se rule, but in cases involving particularly egregious or pervasive harassment, the mere presence of the harasser in the workplace may lend support to a claim for actionable sexual harassment. See id.

After the sexual assault, plaintiff was not only exposed to the "mere presence" of McSweegan at her place of work, but was subjected to additional harassment by McSweegan and others, see McGuinn-Rowe Deposition, at 121-122. Such conduct may have been sufficiently related to the prior incident at the bar to constitute a continuation of sexual harassment. See, e.g. Hirase-Doi v. U.S. West Communications, Inc., 61 F.3d 777, 784 n.3 (10th Cir. 1995)(continuing sexual harassment may have occurred where perpetrator of previous acts of sexual harassment allegedly stared threateningly at plaintiff after she reported

7

his conduct to management); Russell v. Midwest-Werner & Pfleiderer, 949 F. Supp. 792, 800 n.4 (D. Kan. 1996). In addition, after being informed of the sexual assault, defendant apparently failed to take any action to prevent the continuation of the harassment. See McGuinn-Rowe Deposition, at 60. Given that plaintiff experienced harassment at the work site and the incident at the bar may have formed part of a pattern of such harassment, the bar incident may well be relevant to the issue of whether plaintiff experienced a hostile environment at her place of work. See, e.g. Fuller v. City of Oakland, Calif., 47 F.3d 1522, 1527-28 (9th Cir. 1995)(allegations that included harassment of employee both at work and at her home when she was off-duty supported an actionable claim for sexual harassment). Under these circumstances, and also factoring in the harassment perpetrated by Chick, a genuine issue of material fact exists as to whether the plaintiff's work environment was "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'". Harris, supra, 510 U.S. at 21 (quoting Meritor Savings Bank, supra, 477 U.S. at 65, 67).

Defendant also argues that the harassment did not occur frequently enough to be actionable. Accepting as true that

8

McSweegan committed the behavior described by plaintiff, even this single incident of sexual assault may have "sufficiently alter[ed] the conditions of [plaintiff's] employment and clearly create[d] an abusive work environment for purposes of Title VII." See Tomka v. Seiler, 66 F.3d 1295, 1305 (2d Cir. 1995). In addition, although plaintiff did not remember in her deposition every instance of harassment by Chick and other of defendant's employees, her general statement that the offensive language was used "All of the time", McGuinn-Rowe Deposition, at 92, suffices to raise a genuine issue of material fact. See, e.g. Torres v. Pisano, ___ F.3d ___, 1997 WL 290196, at *4 (2d Cir. June 3, 1997)(holding that general deposition testimony about constant verbal abuse permitted the plaintiff to withstand summary judgment). To the extent that defendant believes that plaintiff's testimony contains flaws or inconsistencies, defendant should have the opportunity to bring them to light at trial.

Accordingly, having reviewed plaintiff's evidence in this regard, the court finds that the existence of a genuine issue of material fact requires that it deny defendant's motion for summary judgment on this issue.

Defendant also challenges the employer liability prong of McGuinn-Rowe's sexual harassment claim. It argues that it cannot

be liable under Title VII for McSweegan's conduct at the bar because it occurred away from the workplace and outside normal working hours.

The issue raised by defendant is somewhat tricky. As an initial matter, ordinarily an employer would not be liable for the harassment or other unlawful conduct perpetrated by a nonsupervisory employee after work hours and away from the workplace setting. However, this case has factors that require further scrutiny.

An employer is generally automatically liable for a supervisory employee's quid pro quo harassment. In contrast, hostile environment sexual harassment is not always perpetrated by virtue of the mantle of authority conferred by the employer. As a consequence, an employer's liability for a hostile environment caused by lower-level supervisory employees or plaintiff's co-workers exists, "*if* an official representing the institution knew, or in the exercise of reasonable care, should of known, of the harassment's occurrence, *unless* that official can show that he or she took appropriate steps to halt it." Lipsett v. University of Puerto Rico, 864 F.2d 881, 901 (1st Cir. 1988). In the case at bar, plaintiff notified defendant of McSweegan's conduct. Accordingly, defendant's apparent failure to take any reasonable steps to prevent McSweegan from continuing

10

to harass plaintiff at work can give rise to liability. Therefore, defendant is not entitled to summary judgment to the extent that plaintiff continued to experience harassment after she complained.

The more difficult question is whether the defendant can be liable for McSweegan's conduct before plaintiff provided defendant with notice of the harassment.

As discussed above, unlike its liability for quid pro quo harassment, an employer is not automatically liable for hostile environment sexual harassment caused by its employees. See id. at 900. A court that is faced with the issue of employer liability under Title VII may look to agency principles for guidance, although strict adherence to such principles is not necessary. See id. In general, an employer will be liable for hostile environment harassment perpetrated by one of its supervisory employees if: (1) the employee was acting within the scope of employment;(2) the employer knew or should have known of the hostile environment and failed to take steps reasonably calculated to end the harassment; (3) the employee occupied a sufficiently high level in the company that his or her actions could be automatically imputed to the company; or (4) the employee acted under apparent authority from the employer or was aided in accomplishing the harassment by his or her relationship

11

to the employer.[2]

The first basis of employer liability, involving actions taken within the scope of employment, certainly does not apply here. Sexual harassment, even when committed at the workplace, is by definition, outside the scope of one's employment.  See, e.g. Andrade v. Mayfair Management, Inc., 88 F.3d 258, 262 (4th Cir. 1996)(collecting cases).  Accordingly, by no stretch of the imagination can the court find that McSweegan was acting within the scope of his employment when he assaulted plaintiff at the restaurant.

The second basis of employer liability, termed by some circuits as "direct" liability because an employer is liable for its own misconduct, is a possible avenue for plaintiff.  As discussed supra, at 10, under this standard, an employer is liable

> *if* an official representing that institution knew, or in the exercise of reasonable care, should have known, of the harassment's occurrence, *unless* that official can show that he or she took appropriate steps to halt it.

_____

[2]These four general bases of liability represent a composite taken from various sources including the Restatement (Second) of Agency § 219 (1958) and Torres, supra, 1997 WL 290196, at *6; Knabe v. The Boury Corp., 114 F.3d 407, 410-11 (3d Cir. 1997)(citing Bouton v. BMW of North America, Inc., 29 F.3d 103, 106-107 (3d Cir. 1994));  Harrison v. Eddy Potash, Inc., 112 F.3d 1437, 1447 (10th Cir. 1997).

Lipsett, supra, 864 F.2d at 901. Interestingly, in the Second Circuit, an employer can be liable for hostile environment sexual harassment if it did not provide a reasonable avenue of complaint; see Torres, supra, 1997 WL 290196, at *6 (citing Karibian v. Columbia Univ., 14 F.3d 773, 779 (2d Cir. 1994)). Even more surprising, the Ninth Circuit has held that an employer can be liable for failing to take any corrective action, even if the harassment does not persist after plaintiff complains to her employer. See Fuller v. City of Oakland, Calif., 47 F.3d 1511, 1528-29 (9th Cir. 1995). But see Zimmerman v. Cook County Sheriff's Dep't, 96 F.3d 1017, 1019 (7th Cir. 1996) (embracing a proximate cause approach). The Ninth Circuit placed particular emphasis on Title VII's purpose of preventing future harassment and encouraging employers to take prompt disciplinary action. Although plaintiff has not used any of these rather creative theories to support her argument, the court is hesitant to grant defendant summary judgment on this specific issue at this point in the litigation. However, at the request of a party, the court may decide to entertain further briefing on this subject at some later date.

Plaintiff does invoke the third basis of employer liability by arguing that McSweegan occupied an upper-level management position in the company and that therefore his acts are

13

automatically attributable to the company.  Some circuits recognize that, "'[a]t some point . . . the actions of a supervisor at a sufficiently high level in the hierarchy would necessarily be imputed to the company.'"  Torres, supra, 1997 WL 290196, at *6 (quoting Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 64 (2d Cir. 1992)); see also Saxton v. American Telephone and Telegraph Co., 10 F.3d 526, 536 n.19 (7th Cir. 1993).  From the court's review of the record, the precise nature of McSweegan's position at the company appears uncertain.  Although his title is manager, it does not appear that McSweegan occupies so high a rung in defendant's corporate ladder that his conduct can be automatically imputed to the company.  Accordingly, defendant's motion for summary judgment is granted as to this issue.

Finally, defendant is also entitled to summary judgment on the issue of whether McSweegan acted under apparent authority from defendant or was aided in the accomplishment of the harassment by his relationship to the defendant.  In order to succeed on such theory, plaintiff "'must allege facts which establish a nexus between the supervisory authority' and the harassment."  Torres, supra, 1997 WL 290196, at *7 (quoting Tomka, supra, 66 F.3d at 1306).  Although not a demanding requirement, ordinarily the employee has taken some advantage of

14

his or her position of authority when committing the harassment. See id. For example, a supervisory employee who convened a business dinner before later sexually assaulting an employee was found to have been aided by the existence of the agency relationship. See id. (collecting cases). The evidence does not establish that McSweegan used his authority to carry out the harassment of plaintiff at the restaurant. Accordingly, defendant is entitled to summary judgment on this issue.

### Conclusion

Defendant's motion for summary judgment on plaintiff's sexual harassment claim is primarily denied. However, to the extent that plaintiff seeks to go forward on agency theories (1), (3), and/or (4) (as enumerated in the above discussion) in order to impute liability to defendant for McSweegan's conduct at the restaurant, defendant is entitled to summary judgment. The court additionally notes that defendant's motion for summary judgment did not extend to plaintiff's Title VII retaliatory discharge claim. The court has considered the Report of the Parties'

15

Planning Meeting; however, the preliminary pretrial conference remains scheduled for July 16, 1997, at 9:00 a.m.

**SO ORDERED.**

_____
Shane Devine, Senior Judge
United States District Court

July 10, 1997
cc:   H. Jonathan Meyer, Esq.
      Andrea K. Johnstone, Esq.